NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3422-21
                A-3664-21

JUSTIN ZIMMERMAN,
ACTING COMMISSIONER,
NEW JERSEY DEPARTMENT
OF BANKING AND INSURANCE,[1]

      Petitioner-Respondent,

v.

MICHAEL PATRICK DIVINEY
and PROPERTY DAMAGE
ADJUSTERS, INC.,

      Respondents-Appellants.

_____

JUSTIN ZIMMERMAN,
ACTING COMMISSIONER,
NEW JERSEY DEPARTMENT
OF BANKING AND INSURANCE,

      Petitioner-Respondent,

v.

DIVERSIFIED PUBLIC
ADJUSTERS, LLC and

> **APPROVED FOR PUBLICATION**
>
> **September 26, 2023**
>
> **APPELLATE DIVISION**

---

[1] The caption has been updated in accordance with Rule 4:34-4 to reflect the current commissioner of the New Jersey Department of Banking and Insurance.

JOSEPH VULPIS,

Respondents-Appellants.

_____

Argued September 11, 2023 — Decided September 26, 2023

Before Judges Mawla, Marczyk, and Chase.

On appeal from the New Jersey Department of Banking and Insurance.

Thomas E. Maloney, Jr., argued the cause for appellants.

Nicholas Kant, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Nicholas Kant, and Dakar Ross, Deputy Attorney General, on the briefs).

Dennis Patterson, attorney for amicus curiae American Association of Public Insurance Adjusters in Docket No. A-3422-21.

The opinion of the court was delivered by

MAWLA, J.A.D.

In A-3422-21, defendants Michael Patrick Diviney and Property Damage Adjusters, Inc. (PDA) appeal from a June 8, 2022 final agency decision by the New Jersey Department of Banking and Insurance (DOBI), finding defendants violated the New Jersey Public Adjuster's Licensing Act (PALA), N.J.S.A. 17:22B-1 to -20. In A-3664-21, defendants Joseph Vulpis and Diversified Public Adjusters LLC (DPA) appeal from a June 20, 2022 final decision by

DOBI, finding defendants in violation of PALA. The two appeals raise overlapping issues and therefore were argued together. We affirm in part, and reverse and remand in part for the reasons expressed in this opinion.

I.

The Legislature passed PALA to regulate public adjusters, or "any individual, firm, association or corporation who, or which, for money . . . aids in any manner on behalf of an insured in negotiating for . . . the settlement of claims for loss of damage . . . ." N.J.S.A. 17:22B-2. Licenses are granted to those who are "trustworthy and competent to act as an adjuster in a manner as to safeguard the interests of the people . . . ." N.J.S.A. 17:22B-5.

PALA proscribes the conduct of licensees as follows:

> No individual, firm, association or corporation licensed under this act shall:
>
> a. solicit the adjustment of a loss or damage occurring in this State from an insured . . . between the hours of six p.m. and eight a.m. during the [twenty-four] hours after the loss has occurred;
>
> b. enter into any agreement, oral or written, with an insured to negotiate or settle claims for loss or damage occurring in this State between the hours of six p.m. and eight a.m. during the [twenty-four] hours after the loss has occurred;
>
> c. have any right to compensation from any insured for or on account of services rendered to

an insured as a public adjuster unless the right to compensation is based upon a written memorandum, signed by the party to be charged and by the adjuster, and specifying or clearly defining the services to be rendered and the amount or extent of the compensation on a form and with such language as the [DOBI] commissioner may prescribe . . . .

[N.J.S.A. 17:22B-13.]

N.J.S.A. 17:22B-20 authorizes the commissioner to "promulgate any rules and regulations as may be necessary to effectuate the purposes of [PALA] pursuant to the 'Administrative Procedure Act[ (APA), N.J.S.A. 52:14B-1 to -15] . . . .'"  Pursuant to this authority, the commissioner enacted N.J.A.C. 11:1-37.1 to -37.19 to "establish procedures for the examination, licensing, continuing education, and conduct of persons acting as public adjusters in this State."  N.J.A.C. 11:1-37.1.

The regulations delineate the required content of public adjuster contracts.  N.J.A.C. 11:1-37.13.  Pertaining to these appeals, the regulations state each contract:

> 3.  Shall contain the following:
>
> > i.  The signatures of the insured and the public adjuster;
> >
> > ii.  A list of services to be rendered and the maximum fees to be charged, which fees shall be reasonably related to services rendered; and

iii.   The time and date of execution of the contract (day, month, year) by each party;

. . . .

5.   Shall prominently include a section which specifies:

i.  The procedures to be followed by the insured if [they] seek[] to cancel the contract, including any requirement for a written notice;

ii.  The rights and obligations of the parties if the contract is cancelled at any time; and

iii.  The costs to the insured or the formula for the calculation of costs to the insured for services rendered in whole or in part.

[N.J.A.C. 11:1-37.13(b)(3), (5).]

N.J.A.C. 11:1-37.14 governs violations and penalties and states:

(a)  The Commissioner may deny, suspend, revoke, or refuse to renew a public adjuster's license based on any violation of [PALA] or this subchapter, or for the commission or omission of any act by a public adjuster which demonstrates that the applicant or licensee is not competent or trustworthy to act as a public adjuster, or where the person has:

1.   Violated any provision of this State's insurance laws, including any rules promulgated thereunder;

. . . .

4.   Demonstrated the applicant's or licensee's lack of integrity, incompetency, bad faith,

5

dishonesty, financial irresponsibility, or untrustworthiness to act as a public adjuster;

. . . .

(b) Any person which violates any provision of this subchapter shall, in addition to any other penalties provided by law, be liable for a civil penalty of not more than $2,500 for a first offense and not more than $5,000 for the second and each subsequent offense. Each transaction or statutory violation shall constitute a separate offense.

[N.J.A.C. 11:1-37.14(a) to (b).]

II.

Diviney has been a licensed public adjuster since 2011. He is the sole owner, officer, and public adjuster for PDA, which was licensed as a business entity public adjuster in 2013.

In 2017, DOBI opened an investigation of Diviney and PDA in response to a complaint and requested "all of the public adjusting contracts [Diviney] had from the start of [his] business until the date of [the] request." Diviney complied and provided DOBI eighty identical contracts he entered with clients. The contracts contained the following language:

[PDA], or their representative is hereby retained to advise and assist in the adjustment of the insurance claim arising from loss by [CAUSE] which occurred on [DATE] . . . . The insured agrees to pay [PDA] for such services a contingent fee of [X]% of the amount paid by the insurance companies in settlement of this loss or a contingent fee of $[X] hereby assigning to

6

the Public Adjuster all monies due or to become due from the insurance companies. The fee shall be due after proofs of loss are sworn to and/or first proceeds issued. The fee of [PDA] shall be due after each draft collected and in the percentage listed in the contract.

. . . .

Notice of Right to Cancel

You, the insured, may cancel this contract at any time prior to midnight on the <u>fourth calendar day</u> after the execution date of this contract. If you exercise your right to cancel this contract, you will be liable to [PDA] for reasonable and necessary emergency out-of-pocket expenses or services which were paid for or incurred by [PDA] to protect the interests of the insured during the preceding cancellation.

If you cancel this contract, anything of value given by you under the contract will be returned to you within [fifteen] <u>business days</u> following the receipt by [PDA] of your cancellation notice, and any security interest arising out of the contract will be cancelled.

To cancel this contract, mail, fax or deliver in person, a signed and dated copy of this notice or any other written notice indicating your intent to cancel and date thereof to [PDA] . . . not later than midnight of [DATE].

I hereby cancel this contract.

DOBI filed an order to show cause against Diviney and PDA, alleging violations of PALA and its related regulations. Count one alleged Diviney "entered into at least [eighty] . . . contracts . . . that did not specifically or

7

clearly define the services to be rendered and did not indicate the time the contracts were executed," violating N.J.S.A. 17:22B-13(c) and N.J.A.C. 11:1-37.13(b)(3)(ii) and (iii). Count two alleged the contracts did not

> specif[y] the procedures to be followed by the insureds if they sought to cancel the contract, including any requirement for a written notice and the rights and obligations of the parties if the contract were cancelled at any time, and the costs to the insured or the formula for the calculation of the costs of the insured for services rendered in whole or in part, in violation of [N.J.S.A. 17:22B-14(a)(1) and (4), N.J.A.C. 11:1-37.13(b)(5)(i), (ii), and (iii), and N.J.A.C. 11:1-37.14(a)(1) and (4)] . . . .

Count three alleged Diviney entered fifteen contracts with insureds "in which the maximum fees to be charged were not reasonably related to the services rendered," in violation of N.J.S.A. 17:22B-14(a)(1) and (4), N.J.A.C. 11:1-37.13(b)(3)(ii), and N.J.A.C. 11:1-37.14(a)(1) and (4).

The matter was transferred to the Office of Administrative Law (OAL) for a hearing before an administrative law judge (ALJ). DOBI moved for summary decision on counts one and two, indicating it would dismiss count three if its motion was granted. Diviney filed a cross-motion for summary decision to dismiss all three counts. The ALJ granted DOBI's motion and denied Diviney's.

Under count one, the ALJ found Diviney violated N.J.S.A. 17:22B-13(c) and N.J.A.C. 11:1-37.13(b)(3)(ii) because Diviney and PDA entered eighty

8

contracts, "which failed to provide language related to services rendered beyond 'advise and assist in the adjustment of the insurance claim.'" Diviney also failed to include the time and date of the execution of the contracts in violation of N.J.A.C. 11:1-37.13(b)(3)(iii).

The ALJ found DOBI proved count two because the contracts failed to include the cancellation language required by N.J.A.C. 11:1-37.13(b)(5)(i), (ii), and (iii). The lack of cancellation language also violated N.J.S.A. 17:22B-14(a)(1) and (4) and N.J.A.C. 11:1-37.14(a)(1) and (4).

The ALJ reviewed the factors under Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 137-39 (1987), and recommended Diviney and PDA be held jointly and severally liable for $80,000 ($1,000 for each contract) and $1,237.50 for investigation costs.

Diviney filed exceptions arguing: (1) the technical deficiency in the contract language did not cause "any injury to any insured"; (2) the ALJ erred in not relying on unpublished precedent from this court; (3) the contracts adequately described the services and "were not required to provide a detailed list of some or all of the services to be provided"; (4) the failure to note the time of day each contract was signed was "irrelevant because [DOBI] did not prove that any contract was signed between the hours of 6:00 p.m. to 8:00 a.m. during the [twenty-four] hours following the loss"; (5) DOBI did not prove the

A-3422-21

Legislature required public adjuster contracts be cancellable at any time; (6) there was no evidence an insured attempted to cancel a contract or suffered any damage from the inability to cancel a contract after the rescission period; (7) there was no evidence of harm to a consumer by the absence of a cost calculation formula in the contracts; (8) Diviney acted competently and in good faith; and (9) because DOBI did not prove a violation, no penalty could be assessed.

The commissioner upheld the ALJ's initial decision. She found "the 'advise and assist' language in the contracts [was] insufficient to comply with the statute and regulation" because N.J.A.C. 11:1-37.13(b)(3)(ii) "requires that a contract . . . contain '[a] list of services to be rendered . . . .'" Diviney's contracts were "too vague to comply with th[e] regulation."

The commissioner found DOBI did "not have to show that [Diviney and PDA] entered into a contract . . . between 6:00 p.m. and 8:00 a.m. following a loss to prove a violation of N.J.A.C. 11:1-37.13(b)(3)(iii)" because they were not charged with soliciting under N.J.A.C. 11:1-37.13(c). DOBI did not have to show a harm to consumers because the deficient contracts were "enough to constitute a violation."

The commissioner found the eighty contracts violated N.J.A.C. 11:1-37.13(b)(5)(i), (ii), and (iii) for not containing cancellation provisions despite

10

the lack of a statutory provision requiring it. She reasoned the regulations were a part of the authority granted by the Legislature to the commissioner "to promulgate any regulations that may have been necessary to effectuate the purposes of [PALA], which undoubtedly includes the protections of consumers from unfair practices by public adjusters. See N.J.S.A. 17:22B-20, . . . B-3, . . . B-12, and . . . B-13."

The commissioner adopted the fines and investigation expenses imposed by the ALJ. Applying the Kimmelman factors, she found: (1) Diviney "acted in bad faith in failing to provide the insureds with their 'mandated rights and disclosures' including the right to cancel the contract at any time"; (2) Diviney offered no evidence of an inability to pay the penalty; (3) the third factor was neutral because DOBI did not present evidence of how much Diviney or PDA profited from the eighty contracts; (4) Diviney's "conduct harmed the public by disregarding important safeguards and protections for consumers"; (5) the period of illegal activity was significant; (6) no criminal charges were brought against Diviney, so a greater civil penalty[2] was warranted; and (7) there was no evidence of prior violations.

III.

_____

[2] Kimmelman, 108 N.J. at 139.

Vulpis and DPA were licensed in 2017 and 2018, respectively. In 2018, a DOBI investigator received a complaint stating, "unlicensed representatives [were] solicit[ing] business for [DPA] . . . us[ing] prefilled contracts [bearing Vulpis's] signature . . . ." Defense counsel disproved the complaint, providing DOBI with seven contracts showing Vulpis's wet signatures. The contracts were identical one-page documents, which contained the following language:

> I/We hereby retain [DPA] . . . to advise and assist in the adjustment of a . . . loss which occurred on or about [DATE] at [ADDRESS]. I/We agree to pay DPA for such services a fee of [X]% of the total insurance proceeds payable and do hereby assign to DPA said percentage of the insurance recovery. In consideration of the fee, DPA will undertake all actions necessary to secure payment of the insurance proceeds, including, as required, review of the insurance coverage, assistance in complying with policy terms and conditions, preparation and submission of claim documents, negotiation with insurance company representatives, preparation and submission of any documents required to obtain payment. . . . .

> If you cancel this contract within the three[-]day rescission period, you will be responsible to reimburse DPA for all out-of-pocket costs incurred or paid on your behalf. Thereafter[,] if you cancel this contract and DPA has undertaken any services on your behalf, you are responsible to pay DPA the percentage of recovery set forth above, unless otherwise agreed.

> NOTICE OF RIGHT TO CANCEL

> YOU HAVE THE RIGHT TO CANCEL THIS CONTRACT AND ASSIGNMENT AT ANY TIME

12

BEFORE MIDNIGHT OF THE <u>THIRD BUSINESS</u> DAY AFTER RECEIVING A COPY OF THIS CONTRACT.  IF YOU WISH TO CANCEL THIS CONTRACT, YOU MUST EITHER (1) SEND A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION BY MAIL OR FAX OR (2) PERSONALLY DELIVER A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION TO DPA AT THE ADDRESS STATED ABOVE.  IF YOU CANCEL THIS CONTRACT, ANYTHING OF VALUE THAT YOU HAVE GIVEN TO DPA WILL BE RETURNED TO YOU OR MADE AVAILABLE TO YOU WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT OF YOUR NOTICE OF CANCELLATION.
THIS RIGHT TO CANCEL TERMINATES AT MIDNIGHT ON __/__/__

DOBI filed an order to show cause alleging the contracts

> failed to include:  (i) the procedures to be followed by the insured if [they] seek[] to cancel the contract, including any requirement for a written notice; (ii) the rights and obligations of the parties if the contract is cancelled at any time; and (iii) the costs to the insured or the formula for the calculation of costs to the insured for services rendered in whole or in part, as required by N.J.A.C. 11:1-37.13(b)(5)(i) to (iii) . . . .

The matter was transferred to the OAL and each party moved for summary decision.  The ALJ granted DOBI's motion, denied Vulpis's motion, and concluded Vulpis and DPA violated N.J.A.C. 11:1-37.13(b)(5)(i), (ii), and (iii).  The ALJ ordered Vulpis to reimburse DOBI $1,025 for investigation costs and ordered a hearing to address the penalties.  Following the hearing,

13

the ALJ ordered Vulpis to pay a civil penalty of $1,000 for each of the six[3] contracts presented by DOBI.

Vulpis filed exceptions and argued: (1) the ALJ erred in finding a violation of N.J.A.C. 11:1-37.13(b)(5)(i) because the regulation does not specify that contracts contain a time period for cancellation; (2) the rights and obligations upon termination were featured prominently in the contract and there was no required format to prominently display this language; (3) the ALJ mistakenly concluded there must be different fees depending on the work performed by the adjuster and these fees were not explained in the contract; (4) he should not be responsible for DOBI's investigative costs because it did not relate to the contracts at issue; (5) DOBI offered no evidence of excess profits generated by Vulpis, which would give weight to the third Kimmelman factor; and (6) the seventh Kimmelman factor favored Vulpis.

The commissioner adopted the ALJ's findings regarding the violations. She agreed the contracts violated N.J.A.C. 11:1-37.13(b)(5)(i), (ii), and (iii) because they did not: provide procedures for cancellation at any time; prominently display the rights and obligations of rescission after the rescission period; and provide the formula for costs rendered in whole or in part. The

---

[3] The ALJ declined to consider the seventh contract because it was terminated within the three-day rescission period.

commissioner modified the initial decision to include violations of N.J.S.A. 17:22B-14(a)(1) and N.J.A.C. 11:1-37.14(a)(1) (violating any provision of insurance laws, including any rules promulgated thereunder); and N.J.S.A. 17:22B-14(a)(4) and N.J.A.C. 11:1-37.14(a)(4) (conduct demonstrating incompetency).

The commissioner adopted the fines and costs imposed by the ALJ on Vulpis but modified the ALJ's finding regarding the seventh contract because whether the contract was cancelled did "not change the fact that [it] was deficient." Therefore, the commissioner imposed an additional $1,000 penalty.

The commissioner analyzed the Kimmelman factors and found they favored the imposition of the fines and penalties. She concluded: (1) there was no bad faith by Vulpis or DPA; (2) there was no evidence of an inability to pay the imposed fine; (3) Vulpis realized profits from this illegal conduct; (4) Vulpis "undermined the public's confidence in the [insurance] industry . . . , causing harm to the public"; (5) the time period of the illegal activity was relatively short; (6) the lack of a criminal liability for these violations favored imposition of a monetary penalty; and (7) there was a prior violation by Vulpis and DPA.

15

IV.

In A-3422-21, Diviney argues his contracts complied with N.J.A.C. 11:1-37.13(b)(3)(ii) and described the services to be rendered. He challenges the finding that he violated N.J.A.C. 11:1-37.13(b)(3)(iii) by not including the time each contract was signed on grounds the regulation is overly broad and ultra vires. He claims N.J.A.C. 11:1-37.13(b)(5)(i), (ii), and (iii) are ultra vires and violate due process because the Legislature never intended to mandate that public adjuster contracts be cancelable at any time.

Vulpis raises in A-3664-21 the same challenges to N.J.A.C. 11:1-37.13(b)(5)(i), (ii), and (iii) as Diviney. He asserts the commissioner should be estopped from finding any violation of these regulations because DOBI failed to promulgate form contracts as required by PALA.

Appellate review of an administrative agency's decision is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). "Ordinarily, an appellate court will reverse the decision of the administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Mejia v. N.J. Dep't of Corr., 446 N.J. Super. 369, 376 (App. Div. 2016) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). We "do[] not substitute [our] judgment of the facts for that of an administrative

agency." Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587 (2001) (citation omitted). We "defer to matters that lie within the special competence" of the administrative agency. Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 202 (App. Div. 2003). Our task is limited to deciding:

> (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339 (App. Div. 2009) (quoting George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994)).]

"However, a reviewing court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue.'" Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (alteration in original) (quoting Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. T.B., 207 N.J. 294, 302 (2011)). "[If] an agency's determination . . . is a legal determination, our review is de novo." L.A. v. Bd. of Educ. of Trenton, Mercer Cty., 221 N.J. 192, 204 (2015) (citation omitted).

When an agency interprets its own regulation, we give substantial deference to the agency unless its interpretation is inconsistent with the

governing legislation.  DiMaria v. Bd. of Trs. of Pub. Emps.' Ret. Sys., 225 N.J. Super. 341, 351 (App. Div. 1988); see also In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 415, 441 (2004) (stating an "agency's interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable" (quoting Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 327 (1984))).  This is because regulations are presumed "both valid and reasonable[.]"  G.C. v. Div. of Med. Assistance & Health Servs., 463 N.J. Super. 79, 93 (App. Div. 2020) (alteration in original) (quoting Hackensack Riverkeeper, Inc. v. N.J. Dep't of Envtl. Prot., 443 N.J. Super. 293, 302 (App. Div. 2015)).  As such, our courts disfavor a finding that "an agency acted in an ultra vires fashion in adopting regulations . . . ."  In re Adoption of 2003 Low Income Hous. Tax Credit Qualified Allocation Plan, 369 N.J. Super. 2, 18 (App. Div. 2004) (quoting N.J. Coal. of Health Care Pros., Inc. v. N.J. Dep't of Banking & Ins., Div. of Ins., 323 N.J. Super. 207, 229 (App. Div. 1999)).

## A.

With these principles in mind, we address Diviney and Vulpis's challenges to the commissioner's findings their contracts violated PALA.  PALA's provisions, namely:  licensing, N.J.S.A. 17:22B-3, and bonding, N.J.S.A. 17:22B-12, requirements; and the statute's description of prohibited practices, N.J.S.A. 17:22B-13, are clearly designed to protect the consumer

18

from unfair practices. N.J.S.A. 17:22B-13(c) requires licensed public adjusters to enter into "a written memorandum" with an insured, which "specif[ies] or clearly defin[es] the services to be rendered and the amount or extent of the compensation on a form and with such language as the [C]ommissioner may prescribe . . . ." Further, the Legislature expressly authorized the commissioner to "promulgate any rules and regulations as may be necessary to effectuate the purposes of [the] act pursuant to the [APA] . . . ." N.J.S.A. 17:22B-20.

"[A]n administrative agency only has the powers that have been 'expressly granted' by the Legislature and such 'incidental powers [as] are reasonably necessary or appropriate to effectuate' those expressly granted powers." In re Centex Homes, LLC, 411 N.J. Super. 244, 251 (App. Div. 2009) (second alteration in original) (quoting Avalon v. N.J. Dep't of Envtl. Prot., 403 N.J. Super. 590, 607 (App. Div. 2008)). Pursuant to this authority, the commissioner promulgated N.J.A.C. 11:1-37.13(b)(3)(ii) to address the requirements of N.J.S.A. 17:22B-13(c). The regulation requires every written memorandum between an adjuster and an insured to contain "[a] list of services to be rendered and the maximum fees to be charged, which fees shall be reasonably related to services rendered . . . ." N.J.A.C. 11:1-37.13(b)(3)(ii).

During the rulemaking process, DOBI received comments on the rule's requirement that contracts include a list of services. 26 N.J.R. 1711, 1711 (Apr. 18, 1994). One commenter "suggested that N.J.A.C. 11:1-37.13(b)[(3)(ii)] should be revised to eliminate the requirement that public adjusters provide, in the contract, a list of the services to be rendered and the maximum fees to be charged for those services." Id. at 1713. The commenter instead "suggested that an explanation of the services to be rendered should be provided, for example 'advise and assist in the preparation and presentation of a claim of insurance.'" Ibid. DOBI responded the "advise and assist" language

> does not contain a list of services and fees. Rather, it contains a broad statement that the public adjuster will "advise and assist in the adjustment of the claim." As is evident from the language in the commenter's contract, an insured cannot ascertain which services will actually be performed. An insured has the right to be informed, in advance of the services to be performed by the public adjuster and the charges for those services. Notwithstanding that an insured may agree to a contingency fee or percentage fee arrangement, the fees must be reasonably related to the services performed. An insured cannot evaluate whether the terms of the contract are fair or reasonable unless [they] know[] exactly which services will be performed by the adjuster and what will be charged for those services.
>
> [Ibid.]

N.J.A.C. 11:1-37.13(b)(3)(ii)'s mandate that all contracts contain a list of services to be rendered was deliberated by DOBI prior to adoption. Requiring

a list is protective of consumers and consistent with PALA. The regulation represents a proper exercise of the legislative mandate to inform consumers of the services provided by a public adjuster. Therefore, the finding that Diviney's contracts violated the regulation was neither arbitrary nor capricious and was not reversible error.

## B.

We reach the same conclusion regarding Diviney's challenge to the finding of a violation for not including the time a contract was signed. PALA prohibits public adjusters from "solicit[ing] . . . between the hours of six p.m. and eight a.m. during the [twenty-four] hours after the loss has occurred"; and "enter[ing] into any agreement . . . with an insured to negotiate or settle claims for loss or damage occurring in this State" during the quiet period. N.J.S.A. 17:22B-13(a) and (b). Therefore, N.J.A.C. 11:1-37.13(b)(3)(iii)'s requirement that each insurance adjustment contract contain "[t]he time and date of execution of the contract (day, month, year) by each party" is neither contrary to nor an unreasonable interpretation of the statute's purpose. Indeed, the time requirement appropriately forces adjusters to show proof of compliance with the prohibition on solicitation contained in the statute.

C.

PALA states a public adjuster's right to compensation under a contract is contingent on "specifying or clearly defining the services to be rendered and the amount or extent of the compensation on a form and with such language as the commissioner may prescribe[.]" N.J.S.A. 17:22B-13(c). Pursuant to the statute, the commissioner adopted rules requiring each contract include:

> (i) [t]he procedures to be followed by the insured if [they] seek[] to cancel the contract, including any requirement for a written notice;
>
> (ii) [t]he rights and obligations of the parties if the contract is cancelled at any time; and
>
> (iii) [t]he costs to the insured or the formula for the calculation of costs to the insured for services rendered in whole or in part.
>
> [N.J.A.C. 11:1-37.13(b)(5).]

"It has been a longstanding principle that 'the grant of authority to an administrative agency is to be liberally construed . . . to enable the agency to accomplish its statutory responsibilities.'" In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. 386, 395 (App. Div. 2018) (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978)). "[A] challenger must 'demonstrat[e] an inconsistency between the regulation and the statute it implements, a violation of policy expressed or implied by the Legislature, an extension of the statute beyond what the Legislature intended,

22

or a conflict between the enabling act and other statutory law that cannot be harmonized.'" G.C., 463 N.J. Super. at 94 (alterations in original) (quoting Hackensack Riverkeeper, 443 N.J. Super. at 302).

"[A]ny regulation exceeding the agency's grant of authority from the Legislature is considered ultra vires, [but] such a finding 'is strongly disfavored, and is made only in exceptional circumstances.'" Gonzalez v. N.J. Prop. Liab. Ins. Guar. Ass'n, 412 N.J. Super. 406, 417 (App. Div. 2010) (quoting In re Route 206 at New Amwell Rd., 322 N.J. Super. 345, 352 (App. Div. 1999)). Although such findings are disfavored, the court's "role is to enforce the will of the Legislature because [s]tatutes cannot be amended by administrative fiat." G.C., 463 N.J. Super. at 94 (internal quotations omitted) (alteration in original).

PALA's legislative history does not convince us the Legislature intended public adjuster contracts must contain provisions for cancellation at any time. Indeed, the legislative history shows the Legislature deleted a provision permitting insureds to unilaterally cancel a contract with a public adjuster within three days of entering the contract. A. 1548 (1992) (third reprint) (deleting previously proposed § 14). However, there is no evidence this translated into legislative authorization for promulgation of a regulation permitting cancellation at any time.

23

The plain language of N.J.A.C. 11:1-37.13(b)(5)(i) and (ii) requires public adjuster contracts set forth the procedures to be followed in the event of a cancellation and advise the consumer of their rights in the event of cancellation, respectively. The regulations do not codify a right of the consumer to cancel a contract with a public adjuster at any time.

The commissioner misinterpreted N.J.A.C. 11:1-37.13(b)(5)(ii) when she found in Diviney's case that DOBI "was well within its authority under [PALA] to promulgate regulations that require that insureds be permitted to cancel their contracts at any time." Likewise, she misinterpreted N.J.A.C. 11:1-37.13(b)(5)(i) in Vulpis's case when she concluded that regulation contemplates the ability to cancel a contract with a public adjuster at any time. These findings were ultra vires of the commissioner's authority and can be found nowhere in PALA or its legislative record. For these reasons, we reverse the findings Diviney's contracts violated N.J.A.C. 11:1-37.13(b)(5)(ii) and Vulpis's violated N.J.A.C. 11:1-37.13(b)(5)(i).

D.

The remaining arguments raised on appeal regarding the violations, which we have not addressed, including the estoppel argument and due process challenges to the regulations, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Except for the commissioner's

24

misinterpretation of N.J.A.C. 11:1-37.13(b)(5)(i) and (ii), DOBI's regulations at issue here regarding public adjuster contracts otherwise flow logically from the legislative authority granted to the commissioner to protect consumers.

V.

Finally, Diviney argues the penalties and costs were arbitrary and capricious because the commissioner misinterpreted the Kimmelman factors, ignored the fact the DOBI investigation found no violation of any statute or regulation, and no consumer was harmed. Vulpis raises similar challenges to penalties and costs imposed by the commissioner.

An appellate court "owes substantial deference to [an] agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). "That deferential standard applies to the review of disciplinary sanctions as well." Ibid. (citing Knoble v. Waterfront Comm'n of N.Y. Harbor, 67 N.J. 427, 431-32 (1975)). Accordingly, we undertake a limited "review of an agency's choice of sanction." In re License Issued to Zahl, 186 N.J. 341, 353 (2006).

"Courts generally afford substantial deference to the actions of administrative agencies . . . because of the expertise and superior knowledge of agencies in their specialized fields, and because agencies are executive actors[.]" Div. of Alcoholic Beverage Control v. Maynards, Inc., 192 N.J. 158,

25                                              A-3422-21

183 (second alteration in original) (quoting Zahl, 186 N.J. at 353). Thus, an agency decision will be upheld so long as it is supported by substantial credible evidence and is not erroneous as a matter of law. See Henry, 81 N.J. at 579-80; In re Aetna Cas. & Sur. Co., 248 N.J. Super. 367, 376 (App. Div. 1991). Regarding the

> authority to alter a sanction imposed by an administrative agency, [an appellate c]ourt can do so only when necessary to bring the agency's action into conformity with its delegated authority. [A c]ourt has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency. It can interpose its views only where it is satisfied that the agency has mistakenly exercised its discretion or misperceived its own statutory authority.
>
> [In re Polk, 90 N.J. 550, 578 (1982).]

"[T]he test in reviewing administrative sanctions is whether such punishment is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness." Ibid. (internal quotations and citations omitted).

Having thoroughly reviewed the record and the commissioner's detailed findings in both matters, we decline to second-guess the fines and penalties justifiably imposed in either matter. However, because we have reversed the findings related to the violation of N.J.A.C. 11:1-37.13(b)(5)(i) and (ii), we remand both cases for a reassessment of the Kimmelman factors, and

26

recalculation of the resulting penalties and costs imposed on Diviney and Vulpis.

Affirmed in part, and reversed and remanded in part in A-3422-21 and A-3664-21. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION